UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAMONE W.,[1]

                              Plaintiff,

              v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

DECISION & ORDER

19-CV-1169MWP

## PRELIMINARY STATEMENT

Plaintiff Shamone W. brings this action pursuant to Section 205(g) of the Social

Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner

of Social Security (the "Commissioner") denying her application for Supplemental Security

Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the

Western District of New York regarding Social Security cases dated June 1, 2018, this case has

been reassigned to, and the parties have consented to the disposition of this case by, the

undersigned.  (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 8, 10).  For the

reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim

for further administrative proceedings consistent with this decision.

_____

[1]  Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

### I.      Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)  whether the claimant is currently engaged in substantial gainful activity;

(2)  if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)  if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4)  if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5)  if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


II.   <u>The ALJ's Decision</u>

In her decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in

substantial gainful activity since November 30, 2015, the application date.  (Tr. 15-32).[2]  At step

two, the ALJ concluded that plaintiff had the severe impairments of migraines, asthma,

posttraumatic stress disorder ("PTSD"), affective disorder, bipolar disorder with psychotic

features, mood disorder, adjustment disorder, and depression.  (*Id.*).  At step three, the ALJ

determined that plaintiff did not have an impairment (or combination of impairments) that met or

medically equaled one of the listed impairments in the Listings.  (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform a full range of work

at all exertional levels but with certain nonexertional limitations.  (*Id.*).  Specifically, the ALJ

limited plaintiff to work involving only occasional interaction with supervisors, coworkers and

the public and only simple, routine tasks, simple work-related decisions, minimal changes in

work routines and processes, and no strict production quotas or a production rate pace.  (*Id.*).

The ALJ further concluded that plaintiff was limited to low stress work involving only simple

instructions and tasks, no supervisory duties, and no independent decision-making.  (*Id.*).  The

---

[2]   The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize
the internal Bates-stamped pagination assigned by the parties.

ALJ also found that plaintiff should avoid jobs requiring exposure to bright or flickering lights, environmental irritants, workplace hazards, or more than moderate noise levels.  (*Id.*).  At steps four and five, the ALJ found that plaintiff had no past relevant work, but that other jobs existed in the national economy that, based upon her age, education, work experience, and RFC, plaintiff could perform, such as unskilled light marker, garment sorter, and classifier.  (*Id.*).  Accordingly, the ALJ found that plaintiff was not disabled.  (*Id.*).

## III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 8-1, 11). Specifically, plaintiff maintains that the ALJ improperly weighed the medical opinions of record, which resulted in an RFC that was not supported by substantial evidence.  (Docket ## 8-1 at 14-23; 11 at 1-4).  In plaintiff's view, the ALJ improperly discounted the opinions authored by her treating nurse practitioner and, in any event, failed to rely on any of the opinions of record, and thus formulated an RFC based solely upon the ALJ's lay reading of the medical evidence. (*Id.*).  Plaintiff also maintains that the ALJ mischaracterized the record in considering her activities of daily living.  (Docket ## 8-1 at 23-30; 11 at 4-6).[3]

---

[3]  Plaintiff's contentions relate only to the mental portion of the ALJ's RFC determination.  Thus, I address the RFC only as it relates to plaintiff's mental limitations.  *See, e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *2 n.3 (W.D.N.Y. 2019) ("[claimant's] RFC determination also included several mental limitations; however, the [c]ourt focuses its opinion on [claimant's] physical limitations because she argues only that the ALJ's physical RFC findings lack substantial evidence").

**IV.**   <u>**Analysis**</u>

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

The record in this case contained five medical opinions assessing plaintiff's mental functional limitations.  The first opinion was authored by plaintiff's licensed master social worker, Valerie A. Fatta ("Fatta"), who had been counseling plaintiff for approximately three months prior to completing a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" on June 4, 2015. (Tr. 335-36, 442).

Fatta indicated that plaintiff suffered from mood disorder and adjustment disorder, for which she received psychotherapy and medication management.  (Tr. 335-36).  She assessed that plaintiff was very limited in her ability to carry out instructions and maintain attention and concentration and moderately limited in her ability to understand and remember instructions, make simple decisions, interact appropriately with others, and function in a work

6

setting at a consistent pace.  (*Id.*).  According to Fatta, plaintiff had no limitations in her ability to maintain socially appropriate behavior without exhibiting behavioral extremes and to adhere to basic standards of personal hygiene and grooming.  (*Id.*).  Fatta opined that plaintiff would be unable to work while she stabilized her mental health.  (*Id.*).

Consultative examiner Susan Santarpia ("Santarpia"), Ph.D., issued the second medical opinion in the record assessing plaintiff's mental abilities.  (Tr. 396-400).  On March 2, 2016, plaintiff presented to Santarpia for a psychiatric examination, reporting that she suffered from anxiety disorder with panic attacks, PTSD due to a two-year violent domestic relationship, depression, and bipolar disorder.  (*Id.*).  Although plaintiff had been receiving ongoing outpatient mental health treatment at Mid-Erie Counseling and Treatment services since March 2015, Santarpia commented that there were "[n]o records to review to substantiate" plaintiff's reported diagnoses.  (*Id.*).  Santarpia indicated that plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits.  (*Id.*).  According to Santarpia, the results of her evaluation appeared to be "consistent with psychiatric problems, but in and of [themselves did] not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis."  (*Id.*).

On March 7, 2016, state agency non-examining consultant Dr. O. Austin-Small ("Austin-Small") opined that plaintiff's psychiatric limitations were non-severe.  (Tr. 123-24). According to Austin-Small, plaintiff had no limitations in her ability to engage in activities of daily living and mild difficulties in her ability to maintain social functioning and concentration,

persistence, and pace.  (*Id.*).  The only support cited for Austin-Small's conclusions was Santarpia's evaluation.  (*Id.*).

On December 27, 2017, plaintiff's treating nurse practitioner, Terry Jo Brooks-Devlin ("Brooks-Devlin") completed a "Medical Statement Concerning Bipolar Disorder and Related Conditions for Social Security Disability Claim."  (Tr. 536-38).  Brooks-Devlin indicated that plaintiff suffered from bipolar I disorder with psychotic features and rule out psychotic disorder and opined that she had marked restrictions in performing activities of daily living and maintaining social functioning.  (*Id.*).  Brooks-Devlin assessed that plaintiff was extremely impaired in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with and proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation.  (*Id.*).  She further assessed that plaintiff was markedly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out short and simple and detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make

8

plans independently of others.  (*Id.*).  According to Brooks-Devlin, plaintiff was moderately impaired in her ability to interact appropriately with the general public.  (*Id.*).

On June 13, 2018, Brooks-Devlin issued another medical opinion concerning plaintiff's mental functioning.  (Tr. 565-69).  She indicated that plaintiff suffered from PTSD and bipolar disorder with psychotic features.  (*Id.*).  Brooks-Devlin assessed that plaintiff had no useful ability to maintain attention for two-hour segments, carry out detailed instructions, set realistic goals or make plans independently of others, or use public transportation and was unable to meet competitive standards in several aptitudes, including, remembering work-like procedures; carrying out very short and simple instructions; maintaining regular attendance and being punctual within customary, usually strict tolerances; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically-based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; being aware of normal hazards and taking appropriate precautions; understanding and remembering detailed instructions; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public; maintaining socially appropriate behavior; and traveling in unfamiliar places.  (*Id.*).  She further opined that plaintiff was seriously limited in her ability to understand and remember very short and simple instructions; sustain and ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; deal with normal work stress; and adhere to basic standards of neatness.  (*Id.*).

9

According to Brooks-Devlin, plaintiff's limitations resulted from her mental impairments, which caused her to be anxious, paranoid, and hypervigilant, and affected her cognitive functioning, ability to focus, and ability to interact with others.  (*Id.*).  Brooks-Devlin opined that plaintiff would be absent at least four days per month and would be unable to engage in full-time competitive employment on a sustained basis.  (*Id.*).

The ALJ reviewed and assigned "little weight" to the opinions rendered by Santarpia, Fatta, and Brooks-Devlin.  (Tr. 27-29).  With regard to Austin-Small's opinion, the ALJ gave it "significant weight," although the ALJ noted that the "medical evidence of record received at the hearing level[] show[ed] that [plaintiff] did] have a 'severe' mental impairment with limitations."  (*Id.*).

Having reviewed the ALJ's decision and the medical opinions of record, I agree with plaintiff that the ALJ's RFC determination is not supported by substantial evidence and that remand is warranted.  Despite a record containing five separate opinions concerning plaintiff's mental functioning, the ALJ formulated an RFC that does not rely upon – and indeed is inconsistent with – the opinions of record.  As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted). "Accordingly, although the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a

general rule, the Commissioner 'may not make the connection himself.'" *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).  Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment," *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (internal quotation omitted), I conclude that those circumstances are not present here.

The medical opinions contained in the record provide drastically different views of plaintiff's mental functional capacity.  State consultants Santarpia and Austin-Small opined that plaintiff's mental impairments did not significantly interfere with her ability to engage in work-related tasks – essentially concluding that plaintiff had no limitations in her ability to engage in work activities.  In stark contrast, treating sources Fatta and Brooks-Devlin assessed that plaintiff's impairments caused substantial limitations in her ability to engage in work-related functions.  The ALJ gave "little weight" to the substantial limitations assessed by Fatta and Brooks-Devlin, gave "little weight" to Santarpia's opinion, and purported to give "significant weight" to Austin-Small's opinion that plaintiff suffered from at most mild limitations in mental functioning.  Yet, the ALJ, without any explanation, formulated an RFC that accounted for several limitations in mental functioning and that appears completely at odds with Austin-Small's opinion that plaintiff's mental impairments were non-severe and caused minimal limitations.

Thus, although the ALJ stated that she was giving the greatest weight to Austin-Small's opinion, the RFC she formulated suggests that she rejected the opinion entirely. "Irrespective of the terminology used by the ALJ, whether it be 'great weight,' 'little weight,'

'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC." *Danielle B. v. Comm'r of Soc. Sec.*, 2021 WL 766857, *4 (W.D.N.Y. 2021) (quotation omitted). In this case, despite assigning various weights to the opinions of record, the ALJ did not account for the limitations – or lack thereof – contained in the opinions. Rather, she formulated an RFC that was completely divorced from the assessments reflected in each of the opinions of record.

Because the ALJ failed to rely on any medical opinion in formulating the RFC, the Court "is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data." *Sherry v. Berryhill*, 2019 WL 441597, *5 (W.D.N.Y. 2019). Accordingly, the Court cannot determine how the ALJ formulated the mental limitations contained in the RFC assessment, and remand is warranted. *See John G. v. Saul*, 2021 WL 118313, *4 (W.D.N.Y. 2021) ("it is unclear how the ALJ determined these limitations, as he did not rely on any medical opinion evidence"); *Frost v. Comm'r of Soc. Sec.*, 2020 WL 4333335, *6 (W.D.N.Y. 2020) ("[e]ven though [the ALJ] rejected all favorable opinions . . . , it is evident from the RFC that [the ALJ] still believed that plaintiff had non-exertional limitations . . . without more of an explanation, it is not evident what record evidence [the ALJ], as a lay person, relied upon in formulating those portions of the RFC"); *Westfall v. Comm'r of Soc. Sec.*, 2020 WL 3818953, *3 (W.D.N.Y. 2020) ("[t]he ALJ did not give controlling or substantial weight to any opinion that could have supported his RFC determination[;] [t]he RFC was therefore not tethered to any medical opinion evidence and as such it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further") (internal quotations omitted); *Wilson v. Colvin*, 2015 WL 1003933 at *21 ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC

12

to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records").

Having concluded that remand for further administrative proceedings is necessary, the Court declines to reach plaintiff's remaining contentions. *See*, *e.g.*, *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 260-61 (W.D.N.Y. 2018) (collecting cases); *see also Rookey v. Comm'r of Soc. Sec.*, 2015 WL 5709216, *4 (N.D.N.Y. 2015) ("[b]ecause [plaintiff's] remaining contentions . . . may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture").

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       March 17, 2021

13